IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANGELA BISONG,              §
                         §
             Plaintiff,      §
                         §
v.                          §
                         §      CIVIL ACTION NO. H-06-1815
THE UNIVERSITY OF HOUSTON    §
and DR. LYNN VOSKUIL,      §
                         §
            Defendants.     §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Angela Bisong, brought this action against the University of Houston and several of its employees for violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and for breach of contract and tortious interference with contract under state law.[1]  In a Memorandum Opinion and Order signed on August 18, 2006 (Docket Entry No. 14), the court dismissed all claims except for Title VI race and national origin discrimination and retaliation claims against the University of Houston, and the tortious interference with contract claim against Dr. Lynn Voskuil in her individual capacity.  Pending before the court is Defendants' Motion for Summary Judgment (Docket Entry No. 30).  For the reasons explained below, the defendants' motion will be granted.

---

[1]Plaintiff, Angela Bisong's, Original Complaint and Jury Demand, Docket Entry No. 1.

## I.  <u>Undisputed Facts</u>

Plaintiff Angela Bisong is a legal alien who was born in the Republic of Cameroon and moved to Houston, Texas, in 1994.  In the Fall of 2002 plaintiff began to pursue a Doctorate of Philosophy in English Literature at the University of Houston.

In the Fall of 2003 plaintiff enrolled in English 8360, Nineteenth-Century British Novel, taught by Dr. Lynn Voskuil.  When plaintiff submitted her first paper for that course, Dr. Voskuil became concerned that plaintiff "did not understand conventions for appropriate attribution and citation of scholarly sources."[2] Dr. Voskuil raised her concerns in a written memorandum to the plaintiff and informally to the Chair of the English Department, Dr. John McNamara.  Dr. Voskuil also met with the plaintiff "on at least five separate occasions to provide individualized instruction in the use and attribution of scholarly sources"[3] and helped plaintiff find a tutor.  "The extra instruction [plaintiff] received slowed her progress in [English] 8360, and at the end of the semester, [plaintiff and Dr. Voskuil] agreed that [plaintiff would receive] an "I" grade (Incomplete) for the course, which she could complete after further tutoring in the use of scholarly sources."[4]

---

[2]Affidavit of Dr. Lynn Voskuil, Exhibit 11 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30.

[3]<u>Id.</u> at p. 3 ¶ 7.

[4]<u>Id.</u>

In the Spring of 2004 plaintiff enrolled in two classes: English 6301, Feminist Theory & Methodology, taught by Dr. Voskuil, and English 7398, Special Problems, an independent studies course directed by Dr. Maria Gonzalez.  On May 4, 2004, Dr. Gonzalez provided Dr. McNamara formal notice "of a case of academic dishonesty committed by [the plaintiff]."[5]  On June 9, 2004, Dr. McNamara presided over a hearing in the English Department at which Dr. Gonzalez presented evidence that the plaintiff "had quoted extensively, usually verbatim, from outside sources which [she] did not acknowledge in the paper [she] submitted to [Dr. Gonzalez] in English 7398."[6]  At the hearing plaintiff was allowed to question Dr. Gonzalez, present her own case, and accept advice from her two attorneys.[7]  Following the hearing, Dr. McNamara decided that plaintiff's "use of outside sources without proper documentation constitute[d] plagiarism."[8] Explaining that Dr. Gonzalez alone had the authority to determine plaintiff's grade, and that although ordinarily plaintiff's action

---

[5]May 4, 2004, letter from Maria C. Gonzalez to John McNamara, Exhibit 7 of Plaintiff's Appendix to Her Brief in Support of Her Response to Defendants' Motion for Summary Judgment with Authorities, Docket Entry No. 35.

[6]June 15, 2004, letter from Dr. John McNamara to plaintiff, Exhibit 2 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30.

[7]<u>Id.</u>

[8]<u>Id.</u>

could result in total withdrawal from the program, Dr. McNamara
decided that plaintiff should only be suspended from the program
for one year.[9]  Plaintiff appealed Dr. McNamara's decision to the
College of Liberal Arts and Sciences.  On August 11, 2004, plain-
tiff's appeal was considered by an Academic Honesty Panel that
consisted of "3 Graduate Students, and 2 Faculty members" of the
College of Liberal Arts and Social Sciences.[10]  On August 12, 2004,
Associate Dean Dr. Sarah Fishman informed the plaintiff that

> [b]ased on the presentation of evidence at the hearing
> held 11 August 2004, the Academic Honesty Panel has
> determined that you did engage in academic dishonesty.
> The paper you submitted to Dr. Gonzalez for English 7398
> constituted plagiarism, a violation of Article 3.02d of
> the Academic Honesty Policy as found in the 2003-2004
> Student Handbook.  The Academic Honesty Panel
> has determined that your sanction will be a grade of "F" in
> the course and academic probation, effective in the Fall
> of 2004 and continuing until graduation.[11]

On August 19, 2004, Dr. Voskuil met with plaintiff to discuss
her registration for the fall semester.  At the meeting plaintiff
informed Dr. Voskuil

> of her intention not to complete [English] 8360.
> [Dr. Voskuil] asked her if she knew what would happen to
> her grade of "I" if she did not complete the class.  She

---

[9]Id.

[10]July 13, 2004, letter from Dr. Sarah Fishman to plaintiff,
Exhibit 3 attached to Defendants' Motion for Summary Judgment,
Docket Entry No. 30.

[11]See August 12, 2004, letter to plaintiff from Associate Dean
Sarah Fishman, Exhibit 8 page 1 of Plaintiff's Appendix to Her
Brief in Support of Her Response to Defendants' Motion for Summary
Judgment with Authorities, Docket Entry No. 35.

said she was aware it would turn into an "F" at the end
of the semester.  She said it did not matter, since she
would enroll in a "replacement class" for [English] 8360
and for the class she took with Dr. Maria Gonzalez in
which she had received an "F" by virtue of a college
academic honesty panel determination against her.
[Dr. Voskuil] asked her what she meant by "replacement
class," since [Dr. Voskuil] knew of no such thing.  She
said someone in Academic Affairs told her that . . . she
could take different classes and have those grades
replace the two "F's."  [Dr. Voskuil] explained to her
that while she could take other courses to fulfill the
category requirements that these courses were intended to
fulfill, the two "F's" would remain on her record.
[Dr. Voskuil] showed her the section of the Ph.D.
handbook that addressed graduate grades and the four-C
rule (a rule applicable to all graduate students at the
University of Houston), and [D. Voskuil] cautioned her
not to make a decision too hastily.[12]

Dr. Voskuil and the plaintiff met again on August 23, 2004,

when plaintiff assured Dr. Voskuil that she had read and understood

the section of the Ph.D. handbook addressing graduate grades, but

that she still did not intend to complete English 8360.[13]

Dr. Voskuil documented her August 23, 2004, meeting with plaintiff

in a writing that stated, <u>inter alia</u>, that they had "discussed the

Four-C Rule, including the fact that the grade of 'U' counts as a

grade of C+ or lower.  Ms. Bisong stated that she understood the

Four-C Rule and how it potentially applies to her situation."[14]

---

[12]Affidavit of Dr. Lynn Voskuil, Exhibit 11 attached to
Defendants' Motion for Summary Judgment, Docket Entry No. 30.

[13]<u>Id.</u>

[14]Writing signed by Dr. Voskuil and dated August 23, 2004,
Exhibit 10 page 2 of Plaintiff's Appendix to Her Brief in Support
of Her Response to Defendants' Motion for Summary Judgment with
Authorities, Docket Entry No. 35.

On August 25, 2004, plaintiff sent Dr. McNamara a "petition for Grades grievance" in which she sought to have an independent team of Dr. Voskuil's and Dr. Gonzalez's peers re-evaluate the grades she received for their courses, i.e., the grade of "I" and/or "F" that plaintiff received for English 7398 from Dr. Gonzalez, and the  grade of "C" received from Dr. Voskuil in Course Number English 6301.[15]  On August 27, 2004, plaintiff sent the same letter to the new chair of the English Department, Dr. Wyman Herendeen.[16]  Plaintiff explained that she was requesting the review because her instructors intended

> to introduce the Four - C Rule dated 08/23/2004, documented on my file and their total efforts to withdraw me from the program.  Also, mindful of their un-compromised quest to undermine the final decision reached in the Appeal Process[; and because]
>
> . . .
>
> [b]ased on my grade profile prior to the above incident, my expected grade has deviated significantly.  It is evident that my instructors are bias [sic] and have allowed their interests to overcome their academic responsibilities.[17]

---

[15]August 25, 2004, letter to Dr. John McNamara from plaintiff, Exhibit 6 page 1 of Plaintiff's Appendix to Her Brief in Support of Her Response to Defendants' Motion for Summary Judgment with Authorities, Docket Entry No. 35.

[16]August 27, 2004, letter to Dr. Wyman Herendeen from plaintiff, Exhibit 6 page 2 of Plaintiff's Appendix to Her Brief in Support of Her Response to Defendants' Motion for Summary Judgment with Authorities, Docket Entry No. 35.

[17]Id.  On January 12, 2005, Dr. Herendeen notified plaintiff that

(continued...)

Thereafter, the plaintiff decided to complete English 8360, and on September 23, 2004, she and Dr. Voskuil executed a written agreement that detailed the assignments the plaintiff would have to complete and the dates they would be due.[18]   In October of 2004 plaintiff submitted a draft of the first paper required for English 8360, and Dr. Voskuil provided plaintiff written comments and suggestions for improvement that included a reminder "to provide appropriate attribution" for ideas or arguments of other scholars.[19] On October 21, 2004, plaintiff sent an e-mail to Dr. Voskuil thanking her for her comments and asserting "I want you to know that this interpretation and discourse in this paper is entirely

---

[17](...continued)
the English Department's Elections, Rules, and Grievance Committee met on 10 January to review your [grade] grievance against Dr. Voskuil.   The Committee was provided copies of your grievance and of the relevant documents pertaining to grievance policies and procedures at the University of Houston.

In the course of its deliberation, the Committee determined that your grievance was based on the allegation of racism and discrimination, and therefore, as per article two in the departmental guidelines, out of their jurisdiction.   For that reason, they directed me to forward your case to the appropriate office dealing with Title IX grievances.   Accordingly, with this letter, I am sending your communication of 15 December to Mr. Abel Garza, Executive Director Office of Affirmative Action.

January 12, 2005, letter from Dr. Wyman H. Herendeen to plaintiff, Exhibit 11 page 3 of Plaintiff's Appendix to Her Brief in Support of Her Response to Defendants' Motion for Summary Judgment with Authorities, Docket Entry No. 35.

[18]See Exhibit 16 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30.

[19]Exhibit 17 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30.

mine.  I did not draw on ideas or arguments of other scholars."[20]
On November 18, 2004, after she received the final draft of
plaintiff's paper, Dr. Voskuil reported to Dr. Wyman Herendeen,
Chair of the Department of English, a second "case of plagiarism
involving [the plaintiff]."[21]  On November 20, 2004, Dr. Herendeen
informed the plaintiff that he had received Dr. Voskuil's charge of
plagiarism.[22]

On November 21, 2004, plaintiff wrote to Dr. Herendeen "to
formally reiterate [her] concerns and grievances towards Dr. Lynn
Voskuil, Ph.D."[23]  Plaintiff's letter to Dr. Herendeen referenced
"[r]acist taunts and deplorable diversity concerns."[24]

On December 9, 2004, Dr. Herendeen presided over a
departmental hearing on Dr. Voskuil's allegation that the plaintiff
had engaged in academic dishonesty in the form of plagiarism.  At
the hearing Dr. Voskuil made a presentation

> which consisted, in part, of twelve passages . . . [from
> plaintiff's] essay that she alleged were plagiarized from
> the essay "The Brother-Sister Relationship in Hard

---

[20]Exhibit 18 attached to Defendants' Motion for Summary
Judgment, Docket Entry No. 30.

[21]Exhibit 9 of Plaintiff's Appendix to Her Brief in Support of
Her Response to Defendants' Motion for Summary Judgment with
Authorities, Docket Entry No. 35.

[22]Exhibit 11 page 1 of Plaintiff's Appendix to Her Brief in
Support of Her Response to Defendants' Motion for Summary Judgment
with Authorities, Docket Entry No. 35.

[23]Exhibit 6 page 3 of Plaintiff's Appendix to Her Brief in
Support of Her Response to Defendants' Motion for Summary Judgment
with Authorities, Docket Entry No. 35.

[24]Id.

Times," by Daniel P. Deneau, published in the Norton
edition of Hard Times, which [the plaintiff] acknowledged
reading.  [Dr. Voskuil] also presented several ways in
which the central argument and structure of [the
plaintiff's] essay, as well as the selection of textual
evidence, mirrors those elements in Deneau's article.[25]

Following Dr. Voskuil's presentation, plaintiff argued that her
essay differed from Deneau's and that "the verbal parallels and
repetitious words, ideas, and phrases were coincidental, and could
not be regarded as plagiarism."[26]   On December 10, 2004,
Dr. Herendeen notified plaintiff that he had decided that
"significant portions of [her] essay were plagiarized from the
article by Daniel P. Deneau,"[27] that his recommendation was that
plaintiff receive an "F" in the course, and that his decision could
be appealed to the college.[28]

Plaintiff appealed Dr. Herendeen's decision to the College of
Liberal Arts and Social Sciences.  On December 22, 2004, Associate
Dean Sarah Fishman notified plaintiff that her appeal would be
heard on January 28, 2005, by an Academic Honesty Panel that would
consist of "3 Graduate Students, and 2 Faculty members."[29]

---

[25]Exhibit 11 page 2 of Plaintiff's Appendix to Her Brief in
Support of Her Response to Defendants' Motion for Summary Judgment
with Authorities, Docket Entry No. 35.

[26]Id.

[27]Id.

[28]Id.

[29]December 22, 2004, letter from Dr. Sarah Fishman to
plaintiff, Exhibit 7 attached to Defendants' Motion for Summary
Judgment, Docket Entry No. 30.

The college hearing on plaintiff's appeal from Dr. Herendeen's determination that she had submitted a plagiarized paper to Dr. Voskuil took place on February 11, 2005. "During the hearing, both Dr. Voskuil and [plaintiff] provided arguments and evidence. [Plaintiff] called a witness, Dr. Juliette Bartlett-Pack, on her behalf."[30]   On February 14, 2005, Dean Fishman informed the plaintiff that

> [b]ased on the presentation of evidence at the hearing held 11 February 2005, the College Academic Honesty Panel has determined that you did engage in academic dishonesty.  The paper you submitted to Dr. Voskuil for English 8360 in the Fall of 2004 constituted plagiarism, a violation of Article 3.02d of the Academic Honesty Policy as found in the 2004-2005 Student Handbook.  The Academic Honesty Panel has determined that your sanction will be expulsion from the university.[31]

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The

---

[30]Affidavit of Assistant Dean Sarah Fishman, Exhibit 1 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 4 ¶ 13.

[31]February 14, 2005, letter from Dean Fishman to plaintiff, Exhibit 8 page 2 of Plaintiff's Appendix to Her Brief in Support of Her Response to Defendants' Motion for Summary Judgment with Authorities, Docket Entry No. 35.

Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id.  Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  Id.

### III.  **Analysis**

Defendants argue that they are entitled to summary judgment because plaintiff cannot produce any evidence capable of raising a genuine issue of material fact for trial.

### A.  **Title VI Claims Against the University of Houston**

The University of Houston argues that it is entitled to summary judgment on plaintiff's Title VI claims for race and

national origin discrimination and for retaliation because plaintiff is unable to produce evidence from which a reasonable fact-finder could conclude that its decision to expel the plaintiff was motivated either by discriminatory animus or by intent to retaliate for filing a grade grievance against Dr. Voskuil.

1.  Applicable Law

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court and the Fifth Circuit have held that a private right of action exists under Title VI only for violations involving intentional discrimination. See Guardians Ass'n v. Civil Serv. Comm'n of City of New York, 103 S.Ct. 3221, 3235 n.27 (1983)). See also Alexander v. Choate, 105 S.Ct. 712, 716 (1985) ("Title VI itself directly reache[s] only instances of intentional discrimination."). The court's "inquiry into intentional race [or national origin] discrimination is essentially the same for individual actions brought under . . . Title VI and Title VII." Baldwin v. Univ. of Tex. Medical Branch at Galveston, 945 F.Supp. 1022, 1031 (S.D. Tex. 1996), aff'd 122 F.3d 1066 (5th Cir. 1997). See also Roberson v. Alltel Information Services, 373 F.3d 647, 651 (5th Cir. 2004) ("The Title VII inquiry is whether the defendant

-12-

intentionally discriminated against the plaintiff."). Like Title VI, Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination. See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997). The issue is not whether the university made an erroneous decision, but whether the university's decision was made with discriminatory motive. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995). Plaintiffs in these types of cases may rely on either direct or circumstantial evidence, or both. See Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005); Wallace v. Methodist Hosp. System, 271 F.3d 212, 219 (5th Cir. 2001), cert. denied, 122 S.Ct. 1961 (2002).

(a)  Direct Evidence

Direct evidence is "evidence which, if believed, proves the fact [in question] without inference or presumption." Fabela v. Socorro Independent School District, 329 F.3d 409, 415 (5th Cir. 2003). If a plaintiff presents direct evidence of discrimination, the plaintiff is allowed to bypass the burden-shifting analysis used in circumstantial evidence cases. Id. Plaintiff does not argue that she has direct evidence of discrimination but, instead, that she can overcome the University of Houston's motion for summary judgment with circumstantial evidence using the burden-shifting analysis articulated in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

-13-

(b)  Circumstantial Evidence

The McDonnell Douglas burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a prima facie case.  Id. at 1824.  Once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the employment action at issue.  Id.  If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's prima facie case disappears, and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination.  A plaintiff may meet this burden by producing evidence tending to show that the reason offered by the defendant is not true but, instead, is a pretext for discrimination.  Id. at 1825.  In Reeves v. Sanderson Plumbing, Inc., 120 S.Ct. 2097 (2000), the Supreme Court clarified the McDonnell Douglas analysis by explaining that a plaintiff need not produce evidence of both pretext and actual discriminatory intent to create a fact issue on a discrimination claim but that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Id. at 2109.

Cases that question academic decisions made by universities require courts to balance the rights of students against the

-14-

school's "legitimate interests . . . in preserving the integrity of
[its] programs." <u>Alexander</u>, 105 S.Ct. at 720.  Because "[c]ourts
are particularly ill-equipped to evaluate academic performance,"
<u>Board of Curators of the University of Missouri v. Horowitz</u>, 98
S.Ct. 948, 956 (1978), courts accord great deference to a school's
determination.   <u>See also</u> <u>Regents of University of Michigan v.
Ewing</u>, 106 S.Ct. 507, 513 (1985) ("When judges are asked to review
the substance of a genuinely academic decision . . . they should
show great respect for the faculty's professional judgment.
Plainly, they may not override it unless it is such a substantial
departure from accepted academic norms as to demonstrate that the
person or committee responsible did not actually exercise profes-
sional judgment."); <u>Levi v. University of Texas at San Antonio</u>, 840
F.2d 277, 280 (5th Cir. 1988) ("To the extent a decision concerning
a teacher's or student's academic performance requires 'an expert
evaluation of cumulative information,' it lends itself poorly to
judicial review.").

    2.   <u>Analysis</u>

       (a)   Race and/or National Origin Discrimination

Plaintiff alleges that defendants intentionally discriminated
against her on the basis of race and national origin by depriving
her of an educational opportunity to obtain a doctoral degree.[32]

---

[32]Plaintiff, Angela Bisong's, Original Complaint and Jury
Demand, Docket Entry No. 1, pp. 9-8 ¶¶ 32-41.

**(1)  Prima Facie Case**

To establish a <u>prima facie</u> case of race and/or national origin discrimination using the <u>McDonnell Douglas</u> analysis the plaintiff must demonstrate that:  (1) she belongs to a protected class; (2) her performance met the university's legitimate expectations; (3) she suffered an adverse action; and (4) either that others not in her protected class received more favorable treatment under similar circumstances or that she was otherwise expelled because of her race and/or national origin.  93 S.Ct. at 1824.

Although plaintiff acknowledges her need to establish a <u>prima facie</u> case,[33] she makes no effort to do so, apparently because the university has simply argued that plaintiff is unable to present evidence from which a reasonable fact-finder could conclude that its legitimate, non-discriminatory reason for her expulsion was not true and, instead, a pretext for race and/or national origin discrimination.  Therefore, assuming without deciding that plaintiff could establish a <u>prima facie</u> case of discrimination, the court concludes that the University of Houston has adequately rebutted any presumption of discrimination that could arise from a <u>prima facie</u> case by articulating a legitimate, nondiscriminatory reason for plaintiff's expulsion, i.e., that plaintiff engaged in academic dishonesty by submitting for course credit two plagiarized

---

[33]Plaintiff's Amended Brief in Support of Her Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 13.

papers, one to Dr. Gonzalez in the Spring of 2004 and another to Dr. Voskuil in the Fall of 2004.

### (2)  Pretext

As evidence that the university's stated reason for her expulsion is not true but, instead, a pretext for unlawful discrimination, plaintiff argues that the paper submitted to Dr. Voskuil was not plagiarized, that Dr. Voskuil made discriminatory statements and threats to her in the Fall of 2003, and that following the plagiarism charge made by Dr. Gonzalez that Dr. Voskuil charged her with plagiarism to make good on her previous threat "to ruin [plaintiff's] transcript to a meaningless value."[34]

#### (i)  Dr. Voskuil's Plagiarism Charge

Plaintiff unsuccessfully attempts to rebut the university's non-discriminatory reason for her expulsion by arguing that its determination that she engaged in academic dishonesty by submitting a plagiarized paper to Dr. Voskuil is not true but is, instead, a pretext for race and/or national origin discrimination because the final draft of the paper that she presented to Dr. Voskuil was not plagiarized.  Citing affidavits from Dr. Juliette F. Bartlett-Pack of DeVry University and the University of Phoenix, and Dr. Alexis Brooks de Vita of Texas Southern University, plaintiff asserts that

---

[34]Id.

-17-

these two professors "both indicated that the paper was not plagiarized."[35]   Plaintiff argues that since Dr. Bartlett-Pack and Dr. de Vita both concluded that paper was not plagiarized, that their affidavits create a genuine issue of material fact that can only be resolved by a jury at trial.  Plaintiff seizes on this fact question as the basis for her contention that the University of Houston's nondiscriminatory reason for her expulsion is not true. However, the question is not whether the university made an erroneous decision, but whether the university's decision was made with discriminatory motive.  Even an incorrect determination that plaintiff submitted a plagiarized paper constitutes a legitimate nondiscriminatory reason for her expulsion.  Since motive is the issue, a dispute in the evidence concerning academic performance does not provide a sufficient basis for a reasonable fact-finder to infer that the proffered justification is unworthy of credence. See Mayberry, 55 F.3d at 1091.  Moreover, as plaintiff has care-fully stated, Dr. Bartlett-Pack and Dr. de Vita "both indicated that the paper was not plagiarized;"[36] neither of these two affiants concluded that the paper was not plagiarized and neither of them opined that the contrary conclusion reached by the University of Houston was unreasonable or unwarranted.

Dr. Bartlett-Pack candidly observed that as much as ten percent of the paper that plaintiff submitted to Dr. Voskuil could

---

[35]Id. at p. 17.

[36]Id. (emphasis added)

have been plagiarized, and Dr. de Vita acknowledged that plain-
tiff's paper contains terminology that overlapped Deneau's essay.

Dr. Bartlett-Pack stated,

I argue that approximately ninety percent of Mrs.
Bisong's paper is not in question.  In addition, even
though it **appears** the remainder percentage comes from
Deneau, this is possible but not probable since Deneau's
article is not unique rather its theme conforms with the
general discourse and is a common variation of <u>Hard
Times</u>.[37]

Dr. de Vita observed that

[i]n reading the two essays and the charge of plagiarism,
I am struck by the strength of Dr. Voskuil's conviction
based on her questionable and subjective interpretations
of extremely slight overlapping terminologies.

. . . What is unfortunate in this case is that, not only
did Ms. Bisong's early interests suffer the lack of
appropriate support and developmental guidance, but that
the travesty of accusing Ms. Bisong of plagiarism should
have been the University of Houston's final response to
its inability to nurture international scholarship in its
study of English Literature.

. . .

It is my impression that only Dr. Voskuil's unfortunate
lack of ease with the wide range of issues and academic
discussion about incest, rape, and prostitution
suppressed in the Victorian imagination and liberated in
its literature could have resulted in the career-damaging
charge she has leveled against Ms. Bisong.[38]

---

[37]Affidavit of Juluette Bartlett-Pack, Ph.D., Exhibit 27 of
Plaintiff's Appendix to Her Brief in Support of Her Response to
Defendants' Motion for Summary Judgment with Authorities, Docket
Entry No. 35, fourth unnumbered page.

[38]Exhibit 28 of Plaintiff's Appendix to Her Brief in Support
of Her Response to Defendants' Motion for Summary Judgment with
Authorities, Docket Entry No. 35, second through fourth unnumbered
pages.

Since both Dr. Bartlett-Pack and Dr. de Vita acknowledge the existence of terminologies in plaintiff's paper that overlap terminologies found in Deneau's essay, the court is not persuaded that their testimony supports the plaintiff's argument that the paper she submitted to Dr. Voskuil was not plagiarized.

Moreover, plaintiff has failed to present any evidence that the graduate students or faculty members who comprised the Academic Honesty Panel failed to conduct an independent review of the evidence before concluding that plaintiff's paper was plagiarized, or that any of them harbored discriminatory animus towards plaintiff's race and/or national origin.  At best the affidavits of Dr. Bartlett-Pack and Dr. de Vita raise a fact issue about the accuracy of the panel's determination, but that fact issue is not a genuine issue of material fact that precludes summary judgment unless it is also accompanied by evidence from which a reasonable jury could infer that the panel's decision to expel the plaintiff was motivated by unlawful discriminatory intent.

(ii) Dr. Voskuil's Alleged Statements

Plaintiff alleges that Dr. Voskuil made statements that show she harbored discriminatory animus towards plaintiff's race and national origin.  Plaintiff asserts that she

> first met Dr. Voskuil in the fall semester of 2003 as a student enrolled in her 19th Century Literature Course. During an initial meeting with Dr. Voskuil, she inquired from Mrs. Bisong about her country of origin, academic profile, and raised concerns about her ability to succeed

since she hailed from a French speaking Central African
country, and questioned the type of UH ambassador she
would represent.  According to Ms. Bisong, Dr. Voskuil
pre-judged her academic competencies as inadequate to
pursue doctoral studies in the Department of English, and
she arrogantly stereotyped her ethnic background and
country of birth.  At one meeting, after reviewing
Mrs. Bison's transcripts, Dr. Voskuil is reported to have
stated, "How come they let you get this far?"
Dr. Voskuil is also reported to have stated that, "If I
cannot throw you out of here, I will make sure I ruin
your transcript to a meaningless value and if possible,
frustrate your stay here by delaying your graduation."[39]

Although plaintiff has _alleged_ that Dr. Voskuil made
discriminatory statements attributed to her, plaintiff has not
submitted an affidavit or any other evidence from which a
reasonable fact-finder could conclude that Dr. Voskuil, in fact,
made these statements to the plaintiff.  Even if Dr. Voskuil did
make these statements, they are not sufficient to raise an
inference that the nondiscriminatory reason for plaintiff's
expulsion is not the true reason but, instead, a pretext for race
and/or national origin discrimination.

In _Palasota v. Haggar Clothing Co._, 342 F.3d 569, 578 (5th
Cir. 2003), _cert. denied_, 124 S.Ct. 1441 (2004), the Fifth Circuit
held that discriminatory remarks may be taken into account "even
where the comment is not in the direct context of the adverse
action and even if uttered by one other than the formal decision
maker, provided that the individual is in a position to influence

---

[39]Plaintiff, Angela Bisong's, Original Complaint and Jury
Demand, Docket Entry No. 1, p. 6 ¶ 18.

the decision.   However, in this case, plaintiff has failed to present any evidence that Dr. Voskuil participated in or influenced the decision to expel her from the university.   Thus, this case can be distinguished from <u>Palasota</u> where discriminatory remarks were made by managers who were in a position to influence the decision to subject the plaintiff to an adverse action.   The undisputed evidence in this case is that Dr. Voskuil charged plaintiff with submitting a plagiarized paper and presented evidence in support of that charge first at the departmental hearing conducted by Dr. Herendeen and then at the college hearing conducted by the Academic Honesty Panel, but that Dr. Voskuil neither participated in the decision making process nor suggested what, if any, sanction should be imposed upon the plaintiff in the event that either Dr. Herendeen or the Academic Honesty Panel found her paper to have been plagiarized.

Dr. Voskuil's undisputed affidavit testimony is that

15.   On December 9, 2004, Dr. Herendeen presided over a departmental hearing concerning my allegation of plagiarism against Ms. Bisong.   I received a copy of Dr. Herendeen's determination dated December 10, 2004, in which he concluded that Ms. Bisong had committed plagiarism and assessed the sanction of an "F" in [English]. 8360.   Ms. Bisong appealed Dr. Herendeen's determination to the college level.   The college academic honesty hearing took place on February 11, 2005.   I presented the same evidence I had at the department hearing, all relating to the paper at issue and the class in which the paper had been assigned.   During the hearing, I did not make any recommendation regarding any sanction.   A couple of days before the hearing, I received a letter from Dean John Antel notifying me that Ms. Bison had filed a Title IX complaint against

me alleging race discrimination.  That was the first time I had heard of any allegations of discrimination against me.  I did not mention Ms. Bisong's Title IX complaint during the college academic honesty hearing.

16.  I was not involved at all as a decision maker in the process pursuant to the Academic Honesty Policy that culminated in the college academic honesty panel's determination of the sanction of expulsion for Angela Bisong.  Dr. Herendeen rendered a decision at the department level, and that decision was appealed by Angela Bisong, resulting in a college level hearing.  Angela Bisong was represented by an attorney at the college level hearing.  At that hearing, the college academic honesty panel rendered its own independent decision.[40]

The undisputed affidavit testimony of Dean Fishman similarly

establishes that

14.  Dr. Lynn Voskuil was not involved at all as a decision maker in the process pursuant to the Academic Honesty Policy that culminated in the college academic honesty panel's determination of the sanction of expulsion for Angel Bisong.  Dr. Herendeen rendered a decision at the department level, and that decision was appealed by Angela Bisong, resulting in a college level hearing.  Angela Bisong was represented by an attorney at the college level hearing.  At that hearing, the college academic honesty panel rendered its own independent decision after hearing arguments and evidence from Angela Bisong and Dr. Lynn Voskuil.  The evidence presented by Dr. Voskuil was appropriate to the case, focusing on the specific paper at issue.  Notably, at no time during the college hearing did Dr. Voskuil provide any information to the panel herself or through documents or witnesses regarding what, if any, sanction she thought was warranted.[41]

The University of Houston has presented undisputed evidence

that the plaintiff was found to have engaged in plagiarism on two

---

[40]Affidavit of Dr. Lynn Voskuil, Exhibit 11 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30, ¶¶ 15-16.

[41]Affidavit of Dean Fishman, Exhibit 1 attached to Defendants' Motion for Summary Judgment, Docket Entry No. 30, p. 4 ¶ 14.

separate, detailed, and fully-vetted occasions.  The first occasion arose in the Spring of 2004 pursuant to a complaint lodged against the plaintiff by Dr. Gonzalez; that occasion is uncontested by the plaintiff in this action.  The second occasion arose in the Fall of 2004 when Dr. Voskuil lodged a similar complaint against the plaintiff.  Plaintiff has not presented any evidence from which a reasonable fact-finder could conclude that the university's decision makers did not base their decision to expel plaintiff on the evidence of plagiarism presented to them but, instead, on discriminatory animus for plaintiff's race and/or national origin. Given the overwhelming evidence supporting the university's nondiscriminatory justification for plaintiff's expulsion, Dr. Voskuil's comments can be viewed as no more than stray remarks, which are insufficient to create a genuine issue of material fact for trial.  See Rubinstein v. Administrators of Tulane Educational Fund, 218 F.3d 392, 400-01 (5th Cir. 2000), cert. denied, 121 S.Ct. 1393 (2001).

In Rubinstein a Jewish professor, who was denied pay raises and tenure, produced evidence that members of the committees responsible for the denials had made discriminatory comments, including an observation "that, if 'the Russian Jew' could obtain tenure, then anyone could."  Id. at 400.  Yet, faced with an employment record that was "replete with evidence of Rubinstein's poor . . . evaluations," id., the Fifth Circuit concluded that the

-24-

evidence of discriminatory statements was not so overwhelming as to preclude summary judgment for the employer.  Citing <u>Brown v. CSC Logic, Inc.</u>, 82 F.3d 651, 655 (5th Cir. 1996), the Fifth Circuit explained that "Rubinstein fails to offer evidence that the comments he complains of are either proximate in time to failure to receive raises or promotions, or that the comments are related to the employment decisions at issue.  The only evidence he offers is that the comments were, in fact, made."  <u>Id.</u> at 401.  In a later case the Fifth Circuit explained further that

> <u>Rubinstein</u> stands . . . for the proposition that an overwhelming case that the adverse employment actions at issue were attributable to a legitimate, nondiscrimina- tory reason will not be defeated by remarks that have no link whatsoever to any potentially relevant time frame.

<u>Russell v. McKinney Hospital Venture</u>, 235 F.3d 219, 229 & n.29 (5th Cir. 2000).

Plaintiff alleges that Dr. Voskuil made discriminatory statements in the Fall of 2003, approximately one year before Dr. Voskuil accused plaintiff of submitting a plagiarized paper and over a year before the Academic Honesty Panel affirmed Dr. Herendeen's determination that plaintiff had submitted a plagiarized paper to Dr. Voskuil and decided that plaintiff should be expelled because the paper submitted to Dr. Voskuil constituted plaintiff's second act of plagiarism.  Since plaintiff fails to offer evidence that Dr. Voskuil's statements were proximate in time to the panel's decision that she be expelled, or that Dr. Voskuil's

statements were related to that decision, assuming without deciding
that Dr. Voskuil made the statements that plaintiff contends she
made, the court concludes that those statements are insufficient to
create a genuine issue of material fact for trial because they are
insignificant in comparison to the evidence that on two separate
and unrelated occasions plaintiff submitted plagiarized work for
course credit.  Moreover, plaintiff has not presented any evidence
that the university would not have expelled another student who
committed the same acts but did not belong to plaintiff's protected
classes.  Accordingly, the court concludes that the statements that
the plaintiff alleges Dr. Voskuil made are insignificant when
compared to the two acts of plagiarism cited by the university in
support of its decision to expel plaintiff and, therefore, not
sufficient to establish discriminatory motive for her expulsion.

### (3)  Conclusions

     For the reasons explained above the court concludes that
plaintiff has failed to raise a genuine issue of material fact for
trial on her Title VI race and national origin discrimination
claims.  Plaintiff's subjective belief that the University of
Houston discriminated against her on the basis of race and national
origin is not sufficient to raise a genuine issue of material fact
for trial that the university's stated reason for her expulsion,
i.e., that she twice submitted plagiarized papers for course

credit, is not the true reason but, instead, a pretext for discrimination.

> (b) Retaliation

Plaintiff alleges that

> Defendants intentionally retaliated against Plaintiff and sanctioned her with expulsion for the allegation of plagiarism as a direct result of her grieving and disputing grades as received from classes instructed by Dr. Voskuil. This retaliation is in direct violation of § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.[42]

Title VI's implementing regulations prohibit the recipient of federal funds from retaliating against any individual who makes a complaint or participates in an investigation under Title VI. 34 C.F.R. § 100.7(e). See also Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003).

### (1) Prima Facie Case

To establish a prima facie case of unlawful retaliation, plaintiff must show (1) that she engaged in protected activity, (2) that she suffered a material adverse action, and (3) that a causal link exists between the protected activity and the adverse action. Id. at 320. See also Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001) (retaliation under Age Discrimination in Employment Act). A "causal link" is established

---

[42]Plaintiff, Angela Bisong's, Original Complaint and Jury Demand, Docket Entry No. 1, p. 8 ¶ 29.

-27-

when the evidence demonstrates that the employer's adverse
employment decision was based in part on knowledge of the
employee's protected activity.  Id.  In order to establish a causal
link, the plaintiff must show that the defendant knew about the
plaintiff's protected activity.  See Manning v. Chevron Chemical
Co., 332 F.3d 874, 883 (5th Cir. 2003), cert. denied, 124 S.Ct.
1060 (2004).  The University of Houston argues that it is entitled
to summary judgment on plaintiff's retaliation claim because "the
facts disprove causation between the events [p]laintiff claims are
the subject of her retaliation: that she was expelled in
retaliation for filing a grievance."[43]  The court agrees.

### (i)  Protected Activity

Citing Chandamuri v. Georgetown University, 274 F.Supp.2d 71,
84 (D.D.C. 2003), plaintiff argues that she "need only prove that
she had a reasonable good faith belief that the practice she
opposed was unlawful under Title VI."[44]  Although plaintiff
acknowledges that she "needed to make the University of Houston
aware that her complaint against Dr. Lynn Voskuil was about
discriminatory conduct,"[45] and asserts that "[t]here is absolutely

---

[43]Defendants' Motion for Summary Judgment, Docket Entry No. 30,
ninth unnumbered page.

[44]Plaintiff's Amended Brief in Support of Her Response to
Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 8.

[45]Id.

no doubt that [she] satisfied this element,"[46] the court disagrees.
The undisputed evidence establishes that Dr. Voskuil's charge of
plagiarism against plaintiff could not have been made in
retaliation for plaintiff's complaint that Dr. Voskuil had
discriminated against the plaintiff because the plaintiff did not
make her complaint until November 21, 2004, three days <u>after</u>
Dr. Voskuil submitted her formal charge of plagiarism against the
plaintiff to Dr. Herendeen on November 18, 2004.[47]

Plaintiff filed her initial grade grievance against
Dr. Voskuil in August of 2004, but that grievance does not contain
any allegation of race or national origin discrimination and does
not mention the allegedly discriminatory remarks that plaintiff
contends Dr. Voskuil made to her in the Fall of 2003.  Instead,
plaintiff's initial grade grievance complained only of "bias"
demonstrated by the "C" that she received from Dr. Voskuil for
English 6301 and by the "F" that she received from Dr. Gonzalez for
the course in which she was first found to have submitted a
plagiarized paper.  Plaintiff's first and only complaint of race
discrimination is contained in the letter that she sent to
Dr. Herendeen on November 21, 2004, in which she reiterated her
concerns and grievances toward Dr. Voskuil.  Plaintiff urged
Dr. Herendeen to

---

[46]<u>Id.</u>

[47]Compare Exhibit 6, pp. 3-4, and Exhibit 9 of Plaintiff's
Appendix to Her Brief in Support of Her Response to Defendants'
Motion for Summary Judgment with Authorities, Docket Entry No. 35.

[p]lease be mindful of my letter dated August 27th 2004,
and I would call your attention once more to the
following:

. . .

☐    Racist taunts and deplorable diversity concerns
     such as "How were you admitted into this program?
     How come they let you get this far?" It is my
     understanding from her misguided statements that my
     completed curriculum courses are from incompetent
     professors.

☐    Questions concerning my intellect remain obvious.
     Dr. Voskuil has repeatedly questioned my intellect,
     intuition, comprehension effectiveness and analyti-
     cal judgment as low at all levels. My reports are
     characterized as poor but a well-written paper must
     have been plagiarized. She has initiated and
     discussed my "incompetence" without my consent with
     Kate Moore, a departmental student in pretext to
     offer me necessary tutoring. This confirms her
     objective use of an academically inferior counter-
     part white student to teach me the effective use of
     MLA format. . . .

. . .

☐    I strongly believe that Dr. Voskuil cannot be
     objective in grading my reports. . . .[48]

     Since it is undisputed that Dr. Voskuil submitted her charge

of plagiarism against the plaintiff to Dr. Herendeen on

November 18, 2004, and that plaintiff submitted her charge of race

discrimination against Dr. Voskuil to Dr. Herendeen on November 21,

2004, the undisputed evidence is that Dr. Voskuil's charge of

plagiarism against the plaintiff could not have been filed in

_____

     [48]November 21, 2004, letter to Dr. Wyman Herendeen from
plaintiff, Exhibit 6 page 3 of Plaintiff's Appendix to Her Brief in
Support of Her Response to Defendants' Motion for Summary Judgment
with Authorities, Docket Entry No. 35.

-30-

retaliation for the plaintiff's exercise of rights protected by
Title VI because the grade grievance plaintiff initially filed
against Dr. Voskuil in August of 2004 did not include a charge of
discrimination protected by Title VI; and plaintiff did not assert
such a charge against Dr. Voskuil until November 21, 2004, three
days _after_ Dr. Voskuil had formally charged her with a second case
of plagiarism. However, since, the plaintiff's letter of
November 21, 2004, contains a discrimination charge, and that
charge was filed _before_ the Academic Honesty Panel decided that she
should be expelled, the court concludes that plaintiff engaged in
activity protected by Title VI prior to the panel's decision that
she should be expelled.

### (ii) Causal Link

#### (A)  Chronology of Events

Plaintiff relies on the chronology of events to establish the
causal link between her exercise of protected activity
(discrimination complaint made to Dr. Herendeen on November 21,
2004, against Dr. Voskuil), and the adverse action taken against
her (expulsion in February of 2005). Plaintiff argues that the
causal link is established by the short time lapse between her
complaint about Dr. Voskuil's discriminatory conduct and the
Academic Honesty Panel's decision to expel her. However,
chronology alone will not always create a genuine issue of material
fact for trial. See Roberson, 373 F.3d at 655 ("the mere fact that

some adverse action is taken <u>after</u> an employee engages in some protected activity will not <u>always</u> be enough for a prima facie case") (quoting <u>Swanson v. Gen. Servs. Admin.</u>, 110 F.3d 1180, 1188 n.3 (5th Cir.), <u>cert. denied</u>, 118 S.Ct. 366 (1997)).   <u>See also</u> <u>Richardson v. McDonnell</u>, 841 F.2d 120, 122-123 (5th Cir. 1988) (finding that chronology alone did not support a retaliation claim where protected activity and adverse action took place the same day, the official responsible for the adverse action provided a non-retaliatory motive, and plaintiff never produced documentary or testimonial evidence to support the claim).

In this case the defendant has provided evidence of a non-retaliatory motive for the adverse action.   Therefore, the plaintiff cannot rely on chronology alone to support her claim; she must point to evidence rebutting the university's stated reason for her expulsion.   <u>See</u> <u>Thomas v. Los Rios Community College District</u>, 58 Fed. Appx. 700 (9th Cir. 2003) (finding district court's grant of summary judgment proper where plaintiff, a nursing student, argued that he was suspended because of his race and in retaliation for prior litigation but did not rebut evidence of defendants' non-discriminatory reasons for his suspension).   Despite a sufficient period for discovery, plaintiff has failed to present any evidence that the Academic Honesty Panel found that she should be expelled for any reason other than their evaluation of evidence that the plaintiff had violated the university's academic honesty

policy by submitting a plagiarized paper to Dr. Voskuil and that plaintiff had previously engaged in the same conduct.  Under these circumstances the court concludes that the plaintiff has failed to establish the prima facie case required to sustain her claim that the University of Houston expelled her in retaliation for having engaged in activity protected by Title VI.  See Roberson, 373 F.3d at 656 (granting summary judgment where plaintiff relied solely on timing allegations and defendants had offered legitimate, nondiscriminatory reasons for their actions).

### (B)  "Cat's Paw" Theory

Plaintiff has not alleged that Dr. Herendeen, any member(s) of the Academic Honesty Panel, or Dean Fishman retaliated against her. Instead, plaintiff merely contends that the university retaliated against her because she leveled grievances against Dr. Voskuil. This argument fails because the undisputed evidence is that Dr. Voskuil was not a member of the Academic Honesty Panel, nor did she have authority over the sanction imposed by the panel, and plaintiff has not presented any evidence that the panel members knew or should have known about either the grade grievance or the allegations of discrimination that plaintiff leveled against Dr. Voskuil.  Moreover, to the extent that plaintiff is attempting to rely on the so-called "cat's paw" theory to establish a causal link by showing that Dr. Voskuil unduly influenced the university's decision, the court rejects that effort.

-33-

The "cat's paw" theory recognizes that "the discriminatory animus of a manager can be imputed to the ultimate decision maker if the decision maker 'acted as a rubber stamp, or the "cat's paw," for the subordinate employee's prejudice.'"   See Laxton v. Gap Inc., 333 F.3d 572, 584 (5th Cir. 2003) (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 227 (5th Cir. 2000)).   "To invoke the cat's paw analysis, [the plaintiff] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited [retaliatory] animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decision maker.'"   Roberson, 373 F.3d at 653 (quoting Russell, 235 F.3d at 227).

Even assuming arguendo that Dr. Voskuil exhibited retaliatory animus towards the plaintiff, the plaintiff has presented no evidence that Dr. Voskuil influenced the Academic Honesty Panel's decision to expel the plaintiff, and the record contains ample evidence that the causal link between the plaintiff's protected conduct and her expulsion was broken by the independent investigation conducted by the Academic Honesty Panel. See Mato v. Baldauf, 267 F.3d 444, 450 (5th Cir. 2001), cert. denied, 122 S.Ct. 2587 (2002).  The undisputed evidence is that Dr. Voskuil's charge of plagiarism prompted a departmental hearing conducted by the Chairman of the English Department, Dr. Herendeen, and that plaintiff's appeal of Dr. Herendeen's decision prompted a college

-34-

level hearing conducted by a five-member Academic Honesty Panel composed of three graduate students and two faculty members. The undisputed evidence is that Dr. Voskuil did not recommend that plaintiff be expelled from the university to either Dr. Herendeen or to the Academic Honesty Panel, and plaintiff neither argues nor presents any evidence from which a reasonable fact-finder could conclude that the panel members failed either to listen to the evidence for and against the plaintiff or to formulate a decision based on their independent analysis of that evidence. Accordingly, the court concludes that plaintiff has failed to present any evidence from which a reasonable fact-finder could conclude that the decision to expel her originated with anyone other than the members of the Academic Honesty Panel, or that the panel members served as a "cat's paw" for Dr. Voskuil's alleged discriminatory animus.

### (2) Pretext

Assuming that plaintiff had been able to establish a <u>prima facie</u> case of retaliation, the court would nevertheless conclude that plaintiff failed to raise a genuine issue of material fact for trial because plaintiff has failed to present any evidence from which a reasonable fact-finder could conclude that the university's decision to expel her was not based on the Academic Honesty Panel's independent determination that plaintiff had twice submitted plagiarized papers for course credit but, instead, was based on

retaliatory animus for the discrimination complaint that plaintiff leveled against Dr. Voskuil.

### (3)  Conclusions

In her amended brief plaintiff asserts

[i]t is believed that Dr. Voskuil's charge of plagiarism was in retaliation for Ms. Bisong's leveling grievances against Dr. Voskuil. It is contended that this allegation and expulsion was motivated by ill will and malice and was a pretext for Ms. Bison's separation from the University of Houston.[49]

For the reasons explained above, the court concludes that plaintiff has failed to raise a genuine issue of material fact for trial on her Title VI retaliation claim. Plaintiff's subjective belief that Dr. Voskuil charged her with plagiarism in retaliation for complaining that Dr. Voskuil discriminated against her on the basis of race and/or national origin is not sufficient to create an inference that the University of Houston did not expel her for the stated reason that she submitted plagiarized papers for course credit.

**B.  Tortious Interference with Contract Claim Against Dr. Voskuil**

Plaintiff alleges that there was a contractual relationship between her and the University of Houston that was subject to interference, and that Dr. Voskuil willfully and intentionally

---

[49]See Plaintiff's Amended Brief in Support of Her Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, p. 5.

interfered with this contract when she "set the second disciplinary proceedings against Ms. Bisong in motion, accusing Ms. Bisong of plagiarizing,"[50] and that such interference was the proximate cause of her expulsion.[51]  Dr. Voskuil argues that as a state official she enjoys official immunity from this claim and, alternatively, that plaintiff has failed to present evidence from which a reasonable fact-finder could conclude that she willfully and intentionally interfered with any contract plaintiff had with the University of Houston.  The court agrees.

    1.  <u>Official Immunity</u>

Citing <u>City of Lancaster v. Chambers</u>, 883 S.W.2d 650 (Tex. 1994), Dr. Voskuil argues that she is entitled to immunity from plaintiff's claim for tortious interference with contract because her affidavit testimony establishes each element of the official immunity analysis.  Government employees are entitled to official immunity from suit for the performance of (1) discretionary duties (2) in good faith (3) while acting within the scope of their authority.  <u>Id.</u> at 653.  Since official immunity is an affirmative defense, government employees seeking to assert official immunity must plead official immunity and prove it.   <u>Id.</u>

Plaintiff argues that "although Dr. Voskuil was exercising discretionary duties under her scope of authority, she did not

---

[50]<u>Id.</u> at p. 21.

[51]See Plaintiff, Angela Bisong's, Original Complaint and Jury Demand, Docket Entry No. 1, p. 11 ¶¶ 46-47.

exercise those duties in good faith."[52]  Plaintiff acknowledges that to controvert Dr. Voskuil's argument she must offer evidence "that no reasonable person in [Dr. Voskuil's] position could have believed the facts were such that they justified her conduct."[53] To satisfy this burden, plaintiff

> urges this Honorable Court to give weighty consideration and evaluation to the evidence as provided by Dr. Juliette F. Bartlett Pack, Ph.D., [Ex. 27], and Dr. Brooks de Vita, Ph.D., [Ex. 28].  Upon doing so, it is believed that only one conclusion can be drawn — no reasonable person in Dr. Voskuil's position could have believed that the paper in question was plagiarized.[54]

Dr. Voskuil asserted the defense of official immunity in defendants' answer to plaintiff's complaint.[55]  For the reasons explained above in § III.A.(2)(a)(2)(i), the court has already concluded that neither Dr. Bartlett-Pack nor Dr. de Vita opined that the paper plaintiff submitted to Dr. Voskuil was not plagiarized or that the University of Houston's determination that it was plagiarized was unreasonable or unwarranted.  Moreover, Dr. Bartlett-Pack opined only that "approximately ninety percent of Mrs. Bisong['s] paper is not in question.  In addition, even though

---

[52]See Plaintiff's Amended Brief in Support of Her Response to Defendants' Motion for Summary Judgment, Docket Entry No. 37, pp. 22-23.

[53]Id. at p. 23 (citing Telthorster v. Tennell, 92 S.W.3d 457, 461 (Tex. 2002) (discussing the "could have believed" standard in context of a police pursuit case)).

[54]Id.

[55]See Defendants' Original Answer and Affirmative Defenses, Docket Entry No. 4, p. 6 ¶ 5.

it **appears** the remainder percentage comes from Deneau, this is possible but not probable. . . ."[56]  The court is not persuaded that the affidavit testimony offered by either Dr. Bartlett-Pack or Dr. de Vita supports the plaintiff's argument that "no reasonable person in [Dr. Voskuil's] position could have believed the facts were such that they justified her conduct."[57]  The court concludes that plaintiff has not shown that Dr. Voskuil's decision to charge plaintiff with plagiarism could not have been made in good faith. See  Telthorster, 92 S.W.3d at 461.  Accordingly, the court concludes that Dr. Voskuil has established that she is entitled to official immunity from plaintiff's claim for tortious interference with contract.

　　2.　Merits of the Tortious Interference with Contract Claim

　　Alternatively, the court concludes that Dr. Voskuil is entitled to summary judgment on plaintiff's tortious interference with contract claim because plaintiff has failed to present any evidence from which a reasonable fact-finder could conclude that Dr. Voskuil tortiously interfered with any contract that plaintiff had with the University of Houston.

　　In order to prevail on a tortious interference with contract claim, plaintiff must establish that (1) she had a valid contract,

---

[56]Affidavit of Juliette Bartlett-Pack, Ph.D., Exhibit 27 of Plaintiff's Appendix to Her Brief in Support of Her Response to Defendants' Motion for Summary Judgment with Authorities, Docket Entry No. 35, fourth unnumbered page.

[57]Id. at p. 23.

(2) Dr. Voskuil willfully and intentionally interfered with the contract, (3) the interference was a proximate cause of plaintiff's injury, and (4) plaintiff incurred actual damages or loss.  <u>See</u> <u>Butnaru v. Ford Motor Co.</u>, 84 S.W.3d 198, 207 (Tex. 2002) (citing <u>Texas Beef Cattle Co. v. Green</u>, 921 S.W.2d 203, 210 (Tex. 1996)). Quoting <u>Holloway v. Skinner</u>, 898 S.W.2d 793, 796 (Tex. 1995), Dr. Voskuil argues that

> [t]he second element of this cause of action is of particular importance when the defendant serves the dual roles of the corporate agent and the third party who allegedly induces the corporation's breach.  To establish a prima facie case under such circumstances, the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract. . . . [T]o meet this burden in a case of this nature, the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests. . . . [T]he mere existence of a personal stake in the outcome, especially when any personal benefit is derivative of the improved financial condition of the corporation or consists of the continued entitlement to draw a salary, cannot alone constitute proof that the defendant committed an act of willful or intentional interference.[58]

In <u>Holloway</u>, 898 S.W.2d at 796, the Texas Supreme Court explained that to meet her "burden in a case of this nature, the plaintiff must show that the defendant acted in a fashion so contrary to the [university's] best interests that [her] actions could only have been motivated by personal interests."  The Court

---

[58]Defendants' Motion for Summary Judgment, Docket Entry No. 30, eleventh unnumbered page.

explained that its holding was consistent with the standard
enunciated in <u>Maxey v. Citizens National Bank of Lubbock</u>, 507
S.W.2d 722, 726 (Tex. 722), "that to prevail the defendant must act
in good faith and believe the act to be in the best interest of the
[university]." <u>Holloway</u>, 898 S.W.2d at 796 n.3.

Acknowledging that as an Associate Professor at the University
of Houston, Dr. Voskuil cannot be said to have tortiously
interfered with a University of Houston contract unless she can
show that Dr. Voskuil was motivated by personal interests,
plaintiff argues that Dr. Voskuil leveled the charge of plagiarism
against her

> to serve her interests of making good on her earlier
> threats to Ms. Bisong, namely the threat that if she
> cannot throw Ms. Bisong out of the University, she would
> make sure that she ruins her transcript to a meaningless
> value and if possible, frustrate her stay by delaying her
> graduation.[59]

Since, like corporate representatives who are duty-bound to protect
the interests of their corporation, faculty members are duty-bound
to protect the interests of their university, "the mere existence
of a personal stake in the outcome . . . cannot alone constitute
proof that the defendant committed an act of willful or intentional
interference." <u>Id.</u> at 796. The plaintiff's own witness,
Dr. Bartlett-Pack, opined that as much as ten percent of the paper

---

[59]See Plaintiff's Amended Brief in Support of Her Response to
Defendants' Motion for Summary Judgment, Docket Entry No. 37,
p. 21.

that plaintiff submitted to Dr. Voskuil appeared to come from the Deneau article.   In light of this evidence, the court concludes that plaintiff has failed to present evidence from which a reasonable fact-finder could conclude that no reasonable person could have believed that the charge of plagiarism should not have been leveled against plaintiff.   Thus, for essentially the same reason that the court has already concluded that Dr. Voskuil is entitled to official immunity on plaintiff's claim for tortious interference with contract, the court also concludes that plaintiff is entitled to summary judgment on plaintiff's claim for tortious interference with contract; i.e., plaintiff has failed to raise a genuine issue of material fact regarding whether Dr. Voskuil willfully and intentionally interfered with any contract that plaintiff had with the University of Houston because plaintiff has failed to present evidence from which a reasonable fact-finder could conclude that Dr. Voskuil did not level the charge of plagiarism against the plaintiff in good faith and did not believe the charge to have been in the university's best interest.

### IV.  Conclusions and Order

For the reasons explained above in § III.A, the court concludes that the University of Houston is entitled to summary judgment on the claims for race discrimination, national origin discrimination, and retaliation that plaintiff has asserted under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  For

-42-

the reasons explained above in § III.B, the court concludes that
Dr. Voskuil is entitled to official immunity from suit on
plaintiff's claim for tortious interference with contract and, in
the alternative, that plaintiff has failed to present any evidence
from which a reasonable fact-finder could conclude that Dr. Voskuil
willfully and intentionally interfered with any contract that
plaintiff has with the University of Houston.   Accordingly,
Defendants' Motion for Summary Judgment (Docket Entry No. 30) is
**GRANTED.**

     **SIGNED** at Houston, Texas, on this 21st day of June, 2007.

                                          SIM LAKE
                           UNITED STATES DISTRICT JUDGE